KILGO v. WAL-MART STORES, INC.

[138 N.C. App. 644 (2000)]

LOUIS KILGO, AND WIFE CAROLE KILGO, PLAINTIFFS v. WAL-MART STORES, INC., WAL-MART STORES, INC., D/B/A SAM'S WHOLESALE CLUB, DEFENDANTS

No. COA99-956

(Filed 5 July 2000)

### 1. Evidence— similar occurrences after accident—not too remote

In a negligence action arising from an injury suffered by plaintiff when freight from a trailer fell on him when he opened the rear door, the trial court did not err by allowing testimony that, within 18 months after plaintiff's injuries, the witness had observed the method used by Wal-Mart to pack and load its merchandise into trailers and had observed merchandise fall out of the trailers when the rear doors were opened. The observations were not too remote in time and allow a reasonable inference that Wal-Mart loaded the trailers without taking precautions necessary to prevent shifting during transport.

### 2. Evidence— report—unredacted version admitted after redacted version

The trial court did not abuse its discretion in a negligence action involving Wal-Mart's practices in loading trailers by admitting an unredacted incident report produced pursuant to a subpoena duces tecum after a redacted version had been admitted. Wal-Mart did not move to quash the subpoena, but to redact a portion of the report, so that the argument concerns the admissibility of the unredacted version. While the admission of the unredacted version after admission of the redacted version has some tendency to prejudice Wal-Mart, admission of the unredacted version has probative value and it cannot be said that the decision of the trial court was so arbitrary that it could not have been the result of a reasoned decision.

### 3. Evidence— incident report—hearsay and opinion—admissible

In an negligence action arising from freight falling from a trailer when the rear door was opened, an incident report was not inadmissible because it contained hearsay and opinion where the person making the report was the manager of the store where the injury occurred, his job responsibilities called for him to complete a form incident report, and the form report called for basic information and asked for comments on how the incident occurred.

**4. Evidence— expert testimony on opposing expert's methodology—excluded—no abuse of discretion**

The trial court did not abuse its discretion in a negligence action by precluding a defense expert from testifying about the methodology used by plaintiff's expert in evaluating plaintiff's vocational rehabilitation prospects. The trial court has great discretion with respect to the examination of witnesses.

Appeal by defendants from judgment filed 13 November 1998 by Judge James U. Downs in Mecklenburg County Superior Court. Heard in the Court of Appeals 6 June 2000.

*Zaman & Associates, by Karen Zaman; Lohf, Shaiman & Jacobs, P.C., by Jeffrey A. Hyman; and Patterson, Karkavy & Lawrence, L.L.P., by Martha A. Geer, for plaintiff-appellees.*

*Smith Helms Mulliss & Moore, L.L.P., by Bradley R. Kutrow, for defendant-appellants.*

GREENE, Judge.

Wal-Mart Stores, Inc. (Wal-Mart) appeals from a judgment entering a jury verdict in the amount of $2,225,000.00 for Louis and Carole Kilgo (the Plaintiffs).[1]

Louis Kilgo (Kilgo), an independent contractor, was injured on 17 January 1991 while opening the rear doors of a trailer (Kilgo trailer) he had transported to a Sam's Club in Fayetteville, North Carolina (the Sam's Club) for unloading. Kilgo worked for National Freight, Inc. and he had been dispatched to transport a load of merchandise from a Wal-Mart distribution center to the Sam's Club, a division of Wal-Mart. The merchandise was packed and loaded by employees of Wal-Mart into the Kilgo trailer. When Kilgo opened the rear left door of the Kilgo trailer, a portion of the cargo fell onto him causing him injury.

The Plaintiffs alleged Wal-Mart was negligent in that Wal-Mart failed to secure the cargo in the Kilgo trailer and the failure to adequately secure the cargo was a proximate cause of his injuries. The Plaintiffs offered the testimony of an eye witness. This witness, Richard West, stated the Kilgo trailer had "no load locks," "[n]o dunnage," "[n]o air bags, [and] no barricade to secure [its] load."

---

1. The judgment reflects a jury award of $2,000,000.00 for Louis Kilgo, for his personal injuries, and $225,000.00 for Carole Kilgo, for her loss of consortium.

Furthermore, the merchandise on each pallet was not "stretch wrapp[ed]" "from the bottom [of the] pallet up to the top of the freight." Two experts testified Kilgo's injuries were caused by Wal-Mart's loading procedure which permitted the merchandise to shift, during transport, into a void in the back of the trailer and against the back door. They further testified industry standards call for loading a trailer of this type using dunnage (to fill the voids), load locks (to secure the merchandise) and stretch-wrap (plastic wrapped around the merchandise to hold it together).

Troy Seamon, a Wal-Mart employee, testified he worked at a Wal-Mart retail store from July 1992 to February 1995 as a cargo unloader. He was allowed to testify, over Wal-Mart's objection the evidence was not relevant, that he observed on "[q]uite a few occasions" merchandise falling out of Wal-Mart trailers that had been transported to a Wal-Mart retail store for unloading. He further was allowed to state he had observed "the way [the trailers were] loaded." The merchandise "was kind of scattered out through the trailer[s]" and "load locks" were not usually used to secure the merchandise.

The Plaintiffs offered into evidence, as their Exhibit #1, a "Report of Customer Incident," a document prepared by Wal-Mart and relating to the events occurring on 17 January 1991. This exhibit contained answers to thirty form questions, was given to the Plaintiffs by Wal-Mart pursuant to pre-trial discovery, and was identified as a redacted document. On 30 October 1998, the Plaintiffs served a subpoena *duces tecum* on the current manager of Sam's Club, Dale Filley (Filley), directing him to produce at trial, on 9 November 1998,[2] the "Report of Customer Incident" relating to Kilgo's injuries. When the Plaintiffs called Filley as a witness, Wal-Mart requested the trial court "redact the portion of the [incident] report" so as to omit the comments in the report on "how the accident occurred" and, thus, make it consistent with the Plaintiffs' Exhibit #1. The trial court denied Wal-Mart's request. In his testimony, Filley stated he had been subpoenaed to bring to the courtroom the full incident report pertaining to this accident, which he had in his possession. He testified the report was kept in the regular course of business at the Sam's Club; it was found in a "file" at the Sam's Club where all incident reports are kept; the purpose of the report is to "have facts of what happened"; it was signed by the manager of the Sam's Club, Jeffery Marmer (Marmer), who had the responsibility to complete the report;

2. The trial in this case began on 2 November 1998 and extended through 13 November 1998.

it was dated 17 January 1991; and it is the report of the incident that is the subject of this action. The Plaintiffs had the report marked as Exhibit #1C and offered it into evidence. Wal-Mart objected on the bases of "Rule 403" and "opinion and hearsay." The trial court overruled the objection and permitted its introduction into evidence. The Plaintiffs' exhibit #1C, on pre-printed form "WPK/8096-340/0187," lists various questions including number 31, which states as follows: "YOUR COMMENTS ON HOW INCIDENT OCCURRED: It appears that double[-]stacked pallet[s] of fax paper [and] calculator rolls were improperly shrink wrapped, allowing them to shift [and] then fall out when the doors opened." In a signed narrative attachment to the Plaintiffs' exhibit #1C, Marmer explained: "When cleaning up, we noticed that there was very little shrink wrap left around on the ground when the merchandise was picked up[.]"

---

The issues presented are whether: (I) evidence of cargo falling out of Wal-Mart trucks, after the incident causing the Plaintiff's injuries, is relevant evidence; and (II) the un-redacted 1991 Wal-Mart incident report was inadmissible on the grounds it contains hearsay and/or opinion evidence.

I

**[1]** Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1999). Evidence of the acts or conduct of a defendant occurring subsequent to the time of the transaction in controversy, if not too remote, can constitute relevant evidence within the meaning of Rule 401. *See State v. Beatty*, 64 N.C. App. 511, 515, 308 S.E.2d 65, 67, *disc. review denied*, 309 N.C. 823, 310 S.E.2d 354 (1983); 29 Am. Jur. 2d *Evidence* § 526 (1994); *see also* N.C.G.S. § 8C-1, Rule 406 (1999) (evidence of "routine practice of an organization . . . is relevant to prove . . . conduct was in conformity with . . . the routine practice").

In this case, Seamon was properly permitted to testify he had observed, within 18 months after Kilgo's injuries, the method used by Wal-Mart to pack and load its merchandise into its trailers, and he had observed merchandise fall out of Wal-Mart trailers when the rear doors were opened. The observations were not too remote in time and allow a reasonable inference that Wal-Mart loaded the Kilgo trailer, as they had loaded the trailers observed by Seamon, without

KILGO v. WAL-MART STORES, INC.

[138 N.C. App. 644 (2000)]

taking precautions necessary to prevent the shifting of the merchandise during transport.[3] The trial court, therefore, did not err in allowing this testimony into evidence. In so holding, we do not address Wal-Mart's contention that Seamon's testimony was inadmissible evidence under Rule 404(b).[4]

II

[2] A subpoena *duces tecum* compels the production of "records, books, papers, documents, or tangible things," N.C.G.S. § 1A-1, Rule 45(c) (1999), patently material to the inquiry, in the context of "a discovery deposition, hearing, trial, or other proceeding in which testimony is to be received," 2 G. Gray Wilson, *North Carolina Civil Procedure* § 45-3, at 98 (2d ed. 1995) [hereinafter 2 *North Carolina Civil Procedure*]; *Vaughan v. Broadfoot*, 267 N.C. 691, 699, 149 S.E.2d 37, 43 (1966). The subpoena may be issued by the clerk of superior court, a trial judge, a magistrate, or a party or their attorney. 2 *North Carolina Civil Procedure* § 45-3, at 98; N.C.G.S. § 1A-1, Rule 45(a), (b). It must be signed by the person issuing it. N.C.G.S. § 1A-1, Rule 45(a). The object of the subpoena *duces tecum* is to secure the production of evidence for presentation to the court, not to secure items for inspection. 81 Am. Jur. 2d *Witnesses* § 19 (1992); *see* N.C.G.S. § 1A-1, Rule 34 (1999) (procedure mandated for discovery of documents). Thus, this subpoena is not properly used for discovery purposes.[5]

3. We reject Wal-Mart's argument that Seamon's testimony is not relevant because his testimony related to the unloading of a trailer of merchandise delivered to a Wal-Mart retail store, not a Sam's store. Although the delivery in this case was to a Sam's store and there is some evidence merchandise is loaded somewhat differently, the trial court is given broad discretion in determining whether the evidence is relevant and we discern no abuse of discretion in this case. In any event, this distinction goes more to the weight of the evidence, not its admissibility. Finally, even if it was error to admit this evidence, Wal-Mart has not shown it was prejudiced thereby. *See FCX, Inc. v Caudill*, 85 N.C. App. 272, 280, 354 S.E.2d 767, 773 (1987) (burden on party complaining about the evidence to show error was prejudicial).

4. Wal-Mart argues once it objected to Seamon's testimony the trial court had an affirmative obligation to conduct a *voir dire* hearing to determine the admissibility of the testimony under Rule 404(b). We disagree. The trial court is required to conduct a *voir dire* hearing only if the evidence is offered pursuant to Rule 404(b). *See State v. Morgan*, 315 N.C. 626, 636, 340 S.E.2d 84, 91 (1986). The Plaintiffs had an obligation to identify the purpose for which the evidence was being offered only if requested to do so, either by the trial court or the party objecting to the evidence. *See State v. Ford*, 136 N.C. App. 634, 640, 525 S.E.2d 218, 222 (2000). In this case, the Plaintiffs did not identify their purpose for offering the evidence and there was no request that they do so.

5. A subpoena *duces tecum* is appropriate to make discovery of documentary evidence held by a non-party. N.C.G.S. § 1A-1, Rule 45(d). In that context, we note a Rule 45(a) subpoena is required to mandate a non-party's attendance at either a Rule 30

**KILGO v. WAL-MART STORES, INC.**

[138 N.C. App. 644 (2000)]

*Vaughan*, 267 N.C. at 699, 149 S.E.2d at 43. The subpoena *duces tecum* is properly issued to any person who can be a witness, party or nonparty. *Id.* at 695, 149 S.E.2d at 40 (court acknowledges "common law courts lacked power to compel a party to produce his books and papers"); 81 Am. Jur. 2d *Witnesses* § 21 (1992). The propriety or validity of the subpoena *duces tecum*, usually challenged by a motion to quash or a motion to modify, must be raised before the time for compliance,[6] and these motions raise issues separate from the admissibility of the material into evidence. 2 *North Carolina Civil Procedure* § 45.4, at 101-02. Whether the subpoena should be quashed or modified is a matter within the sound discretion of the trial court. *Vaughan*, 267 N.C. at 697, 149 S.E.2d at 42. Thus, although the motion to quash is denied, the party having to produce the documents may, nonetheless, challenge the admissibility of the documents. *Id.* ("admissibility is to be determined when [subpoenaed documents] are offered in evidence").

In this case, Wal-Mart did not move to quash the subpoena *duces tecum*,[7] although it did ask the trial court to modify the subpoena so as to "redact the portion of the [incident] report" relating to how "the incident occurred" and, thus, make it consistent with the Plaintiffs' Exhibit #1. Wal-Mart now argues the failure of the trial court to grant its request "put [it] in the unfair and irreparable position of having to deal with a different version of the incident report after the redacted version . . . had already been introduced . . . [suggesting it] had acted

---

(deposition by oral examination) or Rule 31 (deposition upon written questions) deposition. N.C.G.S. § 1A-1, Rules 30(a), 31(a), and 45(a) (1999); 2 *North Carolina Civil Procedure* § 45.5, at 104.

6. A subpoena *duces tecum* may not be proper for a variety of reasons, including, documents are not relevant, material is privileged, or request is over-broad. *See North Carolina Civil Procedure* § 45.4, at 101-02. Furthermore, the subpoena should be quashed "if it is unreasonable and oppressive." N.C.G.S. § 1A-1, Rule 45(c)(1).

7. The record reveals an earlier subpoena for the same 1991 Wal-Mart incident report and a written motion to quash that subpoena. That subpoena, however, was unsigned, and thus, was not valid and enforceable. The Plaintiffs subsequently issued and served a new subpoena for the same incident report, the subpoena now at issue in this case, and the record does not reveal a motion to quash that subpoena.

Nonetheless, Wal-Mart argues in this Court the subpoena must be quashed because of a "procedural impropriety." Specifically, the subpoena "directing a party to produce documents during or just prior to trial is improper, and may not be used instead of established discovery procedures." Although the issue is not presented in this Court, as it was not raised in the trial court, we note that not every subpoena directing a party to produce documents during or just prior to a trial constitutes improper discovery. We see nothing improper about the subpoena in this case.

improperly." This argument does not address the validity or the propriety of the subpoena, but instead concerns the admissibility of the un-redacted version of the incident report. In other words, whether its "probative value is substantially outweighed by the danger of unfair prejudice." N.C.G.S. § 8C-1, Rule 403 (1999). Admittedly, the admission of the un-redacted version of the incident report, when the redacted version had previously been introduced into evidence, has some tendency to prejudice Wal-Mart. On the other hand, the admission of the un-redacted version has probative value, and it was within the discretion of the trial court to balance the probative value against the prejudicial value. *See State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). We cannot say the decision of the trial court was so arbitrary that it could not have been the result of a reasoned decision, and thus, the decision was not an abuse of discretion. *See State v. Burrus*, 344 N.C. 79, 90, 472 S.E.2d 867, 875 (1996).

[3] Wal-Mart argues the un-redacted incident report was not admissible, because it contains hearsay and opinion testimony. We disagree.[8]

Any statement of an agent of a party is admissible into evidence against the principal party if the statement (1) concerns "a matter within the scope of [the] agency," and (2) is "made during the existence of the [agency] relationship." N.C.G.S. § 8C-1, Rule 801(d)(D) (1999). In this case, Marmer was the manager of the Sam's Club at the time Kilgo was injured, and his job responsibilities called for him to complete a form incident report each time someone was injured at the store. The form report called for basic information, *i.e.*, date of accident, nature of injuries, name of injured party, and witnesses to the accident. It also asked for the manager's "COMMENTS ON HOW [THE] INCIDENT OCCURRED." In his capacity as manager, Marmer, on the date of Kilgo's injuries, included on the form his comments on how the incident occurred. Marmer was, thus, an agent of Wal-Mart at the time he entered his comments on the incident report and the entry concerned a matter within the scope of his agency. The un-redacted report was, accordingly, properly admitted into evidence and is not

---

8. Wal-Mart also argues the redacted portion of the incident report was not admissible because it was prepared in anticipation of litigation and, thus, constituted "work product." This is an issue that was not raised in the trial court either by a motion to quash the properly issued subpoena or by any objection to the admission of the incident report. We note, however, the incident report was prepared in the regular course of business and would not, therefore, be protected under the "work product" rule. *Willis v. Power Co.*, 291 N.C. 19, 35, 229 S.E.2d 191, 201 (1976).

violative of the rules prohibiting hearsay or opinion testimony.[9] *See Kremer v. Food Lion, Inc.*, 102 N.C. App. 291, 295, 401 S.E.2d 837, 839 (1991).

**[4]** Wal-Mart finally argues the trial court erred in precluding its expert from testifying about the methodology used by the Plaintiffs' expert in evaluating Kilgo's vocational rehabilitation prospects. We disagree. The trial court has great discretion with respect to the examination of witnesses, *see State v. Covington*, 290 N.C. 313, 334-35, 226 S.E.2d 629, 644 (1976), and we observe no abuse of that discretion in this case.

No error.

Judges HORTON and HUNTER concur.

---

9. Furthermore, the "COMMENTS" in the report about what caused the injuries constitute admissible opinion testimony by a lay witness in that Marmer's opinion was based on perceptions he obtained from observing the accident scene after the merchandise fell from the trailer. N.C.G.S. § 8C-1, Rule 701 (1999).